1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| WILLIAM SUTHERLAND, | ) | 1:09-cv-02152-LJO-GSA-PC |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING IN PART PLAINTIFF'S |
| | ) | MOTION TO COMPEL PRODUCTION OF |
| vs. | ) | DOCUMENTS |
| | ) | (Doc. 41.) |
| JAMES A. YATES, et al., | ) | |
| | ) | FORTY-FIVE DAY DEADLINE FOR |
| | ) | DEFENDANTS TO RESPOND TO REQUEST |
| Defendants. | ) | NO. 3, AS INSTRUCTED BY THIS ORDER |
| _____ | ) | |

## I.    RELEVANT PROCEDURAL HISTORY

William Sutherland ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed the Complaint commencing this action on December 11, 2009. (Doc. 1.) This case now proceeds on the First Amended Complaint, filed on December 6, 2010, against defendants Correctional Officer ("C/O") A. Fernando and C/O M. Jericoff for use of excessive force in violation of the Eighth Amendment; against Warden James A. Yates ("Defendants") for failure to protect Plaintiff in violation of the Eighth Amendment; and on Plaintiff's related state tort claims. (Doc. 15.)

On September 8, 2011, the Court issued a Scheduling Order establishing a deadline of May 8, 2012, for the parties to complete discovery, including the filing of motions to compel.[1] (Doc. 27.)

---

[1]This deadline has not been extended.

1   On February 23, 2012, Plaintiff filed a motion to compel production of documents. (Doc. 33.)  On

2   May 2, 2012, Plaintiff filed an amended motion to compel production of documents. (Doc. 41.)  On

3   May 21, 2012, Defendants filed an opposition to the amended motion. (Doc. 44.)  On June 13, 2012,

4   Plaintiff filed a reply. (Doc. 45.)  Plaintiff's amended motion to compel is now before the Court.

5   **II.**   **PLAINTIFF'S ALLEGATIONS AND CLAIMS**

6       **Allegations in the First Amended Complaint**

7       The events at issue in the First Amended Complaint allegedly occurred at Pleasant Valley

8   State Prison ("PVSP") in Coalinga, California, where Plaintiff is presently incarcerated.  Plaintiff

9   names as defendants Correctional Officer ("C/O") A Fernando, C/O M. Jericoff, James Yates

10   (Warden, PVSP), and Lieutenant R. Lantz.[2]

11       Plaintiff alleges as follows.  On May 26, 2009, Plaintiff stood in the afternoon pill call line

12   for about fifteen minutes, when defendant C/O A. Fernando split the line, causing Plaintiff to be

13   placed near the end of the line.  It was a hot day and Plaintiff was not feeling well, due to chronic back

14   pain and heat sensitivity, so Plaintiff sat down at a nearby table to await his turn.  C/O Fernando

15   approached Plaintiff, and Plaintiff told C/O Fernando he (Plaintiff) was not feeling well.  C/O

16   Fernando instructed Plaintiff to get back in the line.  Plaintiff then tried to explain about his back pain

17   and heat sensitivity, but C/O Fernando again told Plaintiff to get back in the line.  Plaintiff again tried

18   to explain, and C/O Fernando told Plaintiff to stand with his hands behind his back.  Plaintiff

19   complied, and C/O Fernando placed handcuffs on Plaintiff and became extremely aggressive, shoving

20   Plaintiff's arms up and pulling Plaintiff's water bottle out of his pocket and smashing it on the

21   ground.  C/O Fernando yelled to approaching defendant C/O M. Jericoff, "We have a piece of shit

22   here," and Plaintiff responded, "You are not allowed to talk about inmates like that."  C/O Fernando

23   told Plaintiff to shut up and pushed Plaintiff's arms up so high that Plaintiff feared they would break.

24   Plaintiff told C/O Fernando that he (Plaintiff) had a bad shoulder, but C/O Fernando continued to lift

25

26         [2]As stated above, this action now proceeds only against defendants Fernando and Jericoff for excessive

27   force; against defendant Yates, for failure to protect Plaintiff; and on Plaintiff's related state tort claims.  Defendant
Lantz was dismissed from this action by the Court on June 16, 2011, for Plaintiff's failure to state any claims against
the defendant under § 1983.  (Doc. 20.)

28

1  Plaintiff's arms, and Plaintiff was forced to lock his arms to prevent his shoulder from being
2  dislocated.  Plaintiff cooperated with both of the officers and did not resist.

3       Plaintiff asked to speak to Internal Affairs, but C/O Fernando and C/O Jericoff became
4  extremely violent and continued pushing Plaintiff's arms up.  On the way to the Program Office, the
5  officers continued to shove Plaintiff's arms up.  At the Program Office, the officers slammed
6  Plaintiff's face into the wall and swept Plaintiff's legs out from under him, causing him to hit the
7  concrete chin-first. Plaintiff kept crying out that he wasn't resisting and that he wanted to see Internal
8  Affairs.  While Plaintiff was on the ground, C/O Fernando twisted Plaintiff's left leg until Plaintiff
9  cried out in pain.  Plaintiff was pulled up by his wrists, and C/O Jericoff stomped on Plaintiff's right
10  kidney and said in a threatening manner, "Do you still want to see Internal Affairs?"  Plaintiff
11  responded, "No, please, I am not resisting you, please!"  Finally, Plaintiff was yanked up and placed
12  into a cage with his right handcuff so tight that it cut into his wrist, causing it to bleed.  All of the
13  officers in the Program Office refused to loosen the handcuffs for a long time.  When a medical
14  employee came to make a report, an officer told Plaintiff he should just say he had a bad day.
15  Plaintiff was sent to his cell and confined for three days.

16       Plaintiff was found guilty of a 115 rules violation, even though the video of the incident
17  clearly showed the officers' reports to be false.  The officer who oversaw the hearing, Lt. R. Lantz,
18  viewed the video and ignored what it showed and refused to allow Plaintiff to call all of his witnesses.
19  Lt. Lantz allowed Plaintiff to submit only three questions, yet wrote that "subject nor SHO had no
20  further questions for witness.  Witness was excused."

21       Warden James Yates knew that C/O Jericoff was a violent predator who was being
22  investigated by Internal Affairs for a long pattern of abuses involving excessive use of force, and
23  Warden Yates failed to prevent C/O Jericoff from having contact with inmates, resulting in Plaintiff's
24  injury.  The Warden also failed to properly train and supervise C/O Jericoff.

25  **Plaintiff's Claims**

26       Plaintiff now proceeds on claims for excessive force and failure to protect Plaintiff in violation
27  of the Eighth Amendment, and related state claims.

28

1

### *Eighth Amendment Excessive Force Claim*

2

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual

3

Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ." Hudson v.

4

McMillian, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . .

5

contextual and responsive to contemporary standards of decency." Id. (internal quotation marks and

6

citations omitted).   The malicious and sadistic use of force to cause harm always violates

7

contemporary standards of decency, regardless of whether or not significant injury is evident. Id. at

8

9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force

9

standard examines *de minimis* uses of force, not *de minimis* injuries)).   However, not "every

10

malevolent touch by a prison guard gives rise to a federal cause of action." Id. at 9.  "The Eighth

11

Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional

12

recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant

13

to the conscience of mankind." Id. at 9-10 (internal quotations marks and citations omitted).

14

"[W]henever prison officials stand accused of using excessive physical force in violation of

15

the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied

16

in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."

17

Id. at 7.  "In determining whether the use of force was wanton and unnecessary, it may also be proper

18

to evaluate the need for application of force, the relationship between that need and the amount of

19

force used, the threat reasonably perceived by the responsible officials, and any efforts made to

20

temper the severity of a forceful response." Id.  (internal quotation marks and citations omitted).

21

"The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it."

22

Id.

23

### *Eighth Amendment Failure to Protect Claim*

24

The Eighth Amendment protects prisoners from inhumane methods of punishment and from

25

inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006).

26

Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with

27

food, clothing, shelter, sanitation, medical care, and personal safety. Farmer v. Brennan, 511 U.S.

28

825, 832-33, 114 S.Ct. 1970 (1994) (internal citations and quotations omitted).  Prison officials have a duty to take reasonable steps to protect inmates from physical abuse.  Farmer, 511 U.S. at 833; Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005).

To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferent to a serious threat to the inmates's safety."  Farmer, at 834.  The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial 'risk of serious damage to his future health ... .'"  Id. at 843 (citing Helling v. McKinney, 509 U.S. 25, 35 (1993)).  The Supreme Court has explained that "deliberate indifference entails something more than mere negligence ... [but] something less than acts or omissions for the very purpose of causing harm or with the knowledge that harm will result."  Farmer at 835.  The Court defined this "deliberate indifference" standard as equal to "recklessness," in which "a person disregards a risk of harm of which he is aware."  Id. at 836-37.

The deliberate indifference standard involves both an objective and a subjective prong.  First, the alleged deprivation must be, in objective terms, "sufficiently serious."  Id. at 834.  Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate health or safety."  Id. at 837; Anderson v. County of Kern, 45 F.3d 1310, 1313 (9th Cir. 1995).  To prove knowledge of the risk, however, the prisoner may rely on circumstantial evidence; in fact, the very obviousness of the risk may be sufficient to establish knowledge.  Farmer, 511 U.S. at 842; Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995).

## III.    MOTION TO COMPEL

### A.    Federal Rules of Civil Procedure 26(b), 34, and 37(a)

Under Rule 26(b), "[U]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense — including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter.  For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.  Relevant information need not be admissible at the trial if

the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

Pursuant to Rule 34(a) of the Federal Rules of Civil Procedure, "any party may serve on any other party a request to produce and permit the party making the request . . . to inspect and copy any designated documents . . . which are in the possession, custody or control of the party upon whom the request is served." Fed. R. Civ. P. 34(a)(1). "[A] party need not have actual possession of documents to be deemed in control of them." Clark v. Vega Wholesale Inc., 181 F.R.D. 470, 472 (D.Nev., 1998) quoting Estate of Young v. Holmes, 134 F.R.D. 291, 294 (D.Nev. 1991). "A party that has a legal right to obtain certain documents is deemed to have control of the documents." Clark, 81 F.R.D. at 472. Under Rule 34(b), the party to whom the request is directed must respond in writing that inspection and related activities will be permitted as requested, or state an objection to the request, including the reasons. Fed. R. Civ. P. 34(b)(2). Also, "[a] party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request." Fed. R. Civ. P. 34(b)(E)(I).

Pursuant to Rule 37(a), a party propounding discovery may seek an order compelling disclosure when an opposing party has failed to respond or has provided evasive or incomplete responses. Fed. R. Civ. P. 37(a)(3)(B). "[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). "It is well established that a failure to object to discovery requests within the time required constitutes a waiver of any objection." Richmark Corp. v. Timber Falling Consultants, 959 F.2d 1468, 1473 (9th Cir.1992) (citing Davis v. Fendler, 650 F.2d 1154, 1160 (9th Cir.1981)). The moving party bears the burden of demonstrating "actual and substantial prejudice" from the denial of discovery. See Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002) (citations omitted.).

## A. **Plaintiff's Amended Motion**

Plaintiff seeks an order compelling Defendants to produce documents in response to Plaintiff's First Request for Production of Documents Nos. 2, 3, and 5. On September 20, 2011, Plaintiff served his First Request for Production of Documents upon defense counsel Deputy Attorney General John

1   W. Riches II. (Declaration of William Sutherland, Doc. 41 at 9 ¶2.) On November 10, 2011 and

2   December 21, 2011, Plaintiff sent letters to defense counsel asking when he could expect the

3   requested discovery. (Id. at ¶3.) Plaintiff filed a motion to compel, and twenty five days later, on

4   March 9, 2012, Defendants served a Response to Plaintiff's First Request for Production, producing

5   no documents and "objecting to everything." (Id. at ¶¶4, 5.) On April 3, 2012, Defendants filed an

6   opposition to the motion to compel, claiming that the motion was moot because the discovery

7   responses were now in Plaintiff's possession. (Id. at ¶5.)

8          On April 18, 2012, Defendants' new counsel, Deputy Attorney General Diana Esquivel,

9   served a Supplemental Response to Plaintiff's First Request for Production, producing some of the

10  documents requested. (Id. at ¶6.) On May 2, 2012, Plaintiff filed the amended motion to compel,

11  requesting a court order compelling Defendants to produce documents in response to Requests Nos.

12  2, 3, and 5, which were not produced in Defendants' Supplemental Response.

13         The Court shall separately address each of the three Requests at issue.

14  ~:~

15  >      **REQUEST FOR PRODUCTION (RFP) NO. 2:**

16             Certified copies of the Oaths/Affirmations taken and filed with the Secretary of State

17  as is required by the California State Constitution and Laws of the State of California of each

18  and all Defendant's [*sic*], Officer Witnesses, and their Attorney/Representation.

19         **RESPONSE TO RFP NO. 2:**

20             Defendants object to this request on the grounds that it is vague and

21  ambiguous, is not reasonably calculated to lead to the discovery of admissible

22  evidence, and requests confidential peace officer personnel documents protected by

23  state law. Further, Defendants object on the grounds that the request calls for

24  information which is covered by attorney-client privilege.

25         **SUPPLEMENTAL RESPONSE TO RFP NO. 2:**

26             Without waiving any objection previously made, and assuming Plaintiff is

27  requesting the oath Defendants took and signed when they became correctional

28

officers, the oaths of Fernando and Jericoff are included in Attachment B.  After a reasonable inquiry and diligent search, Yates's oath when he became warden cannot be located.

**Arguments**

Plaintiff asserts that he only needs certified copies of the oaths signed by defendants Jericoff and Fernando, and proof that they were filed with the Secretary of State's Office.

Defendants assert that they already produced the signed oaths of defendants Jericoff and Fernando, and that at Plaintiff's deposition on May 4, 2012, Plaintiff asserted that he was satisfied with the copies he received.

Plaintiff asserts that he did come to an agreement with defense counsel at the Deposition of May 4, 2012, but the agreement provided that Defendants still needed to provide proof that the oaths were filed with the Secretary of State's Office. Thus Plaintiff requests proof that the oaths were filed.

**Discussion**

Defendants' objection on the grounds that this RFP is not reasonably calculated to lead to the discovery of admissible evidence of relevance is sustained.  Plaintiff has not indicated how it is relevant to Plaintiff's claims in this action whether Defendants filed their oaths of office with the Secretary of State.  The moving party bears the burden of demonstrating "actual and substantial prejudice" from the denial of discovery.  See Hallett, 296 F.3d at 751.  Defendants are not required to provide a further response to this RFP.

~:~

> **RFP NO. 3:**

All personal [*sic*] records of the following Correctional Officers and Warden: A. Fernando, M. Jericoff, and Warden James A. Yates, Pertaining to, but not limited to, any and all Inmate Complaints, Staff Complaints, Citizen Complaints, and/or any other disciplinary actions involving, but not limited to actions concerning inmates, abuses, rules violations, undue force, Internal Affair investigations and sanctions or reprimands [*sic*]. Due to privacy

///

issues and institutional security the Plaintiff's [*sic*] understands that certain names and information may be edited.

**RESPONSE TO RFP NO. 3:**

Defendants object to this request on the grounds that this request is overbroad, burdensome, is not reasonably calculated to lead to the discovery of admissible evidence, and requests confidential peace officer personnel documents protected by state law and it's [*sic*] disclosure would violate defendants right to privacy.

**SUPPLEMENTAL RESPONSE TO RFP NO. 3:**

Without waiving any objection previously made, Defendants have not been reprimanded, sanctioned, or subject to disciplinary action for their use of force or failure to protect.  Thus, they have no responsive documents in their possession, custody, or control.

After a reasonable inquiry and diligent search, Defendants do not have possession, custody, or control of any inmate grievance, other than Plaintiff's grievance in Attachment A, because inmate grievances/appeals (CDC 602) are filed and permanently maintained under the complaining inmate's CDCR number, not in the staff member's personnel file.  Without the CDCR number or name of the specific inmate filing the complaint, staff would be required to search each inmate's central file for any grievance he may have filed against a specific staff member.  At any given time, there are at least 4,000 inmates at Pleasant Valley State Prison (PVSP).  Searching each central file will require hundreds of work hours, numerous staff (which will need to be drawn from other departments affecting that department's ability to perform their duties and provide services), and take many months to complete.  This extensive search does not take into account that since May 2009, thousands of inmates have transferred to and from PVSP, and those central files are no longer at PVSP.

///

**Arguments**

Plaintiff argues that Defendants have exaggerated the time and effort that would be required to produce these documents, and that Defendants incorrectly stated that the documents are not held in the staff members' personnel files.  Plaintiff contends that all complaints against an officer are maintained in the officer's personnel file, including 602 inmate appeals, staff complaints of excessive use of force and other abuses, and Internal Affairs Investigations.  Plaintiff also contends that the claim that Defendants have not been subject to disciplinary action is false, because in October 2008, defendant Jericoff assaulted an inmate, was reprimanded, and was investigated by the Internal Affairs Department.

Defendants maintain that they have no responsive documents in their possession, custody or control.  Defendants assert that at Plaintiff's deposition, Plaintiff asserted that he only wanted complaints filed against defendant Jericoff.  When defense counsel informed him that no such complaints existed in Jericoff's personnel file and offered to provide the declaration of the custodian of Jericoff's personnel file stating as much, Plaintiff rejected the offer.  Defendants argue that Plaintiff has not submitted any evidence to support his contention that any complaint for excessive force is contained in defendant Jericoff's personnel file or that Jericoff has ever been disciplined for excessive force.

Plaintiff insists that complaints for use of force have been filed against defendant Jericoff and should be contained in Jericoff's personnel files.  Plaintiff asserts that he filed a complaint and exhausted his remedies, and that another inmate named Cruda also filed a complaint against Jericoff.  Plaintiff argues that under California Penal Code § 832.5, complaints must be retained for five years in the officer's personnel file or in a separate file deemed personnel records.  Plaintiff also argues that it is not overly burdensome to search the personnel file and the separate file, and that he should not have to suffer if the information is not easily accessible because Defendants have an inefficient filing system.

**Discussion**

Plaintiff seeks copies of inmate complaints, investigations, and disciplinary actions against defendants Fernando and Jericoff for use of excessive force.  The parties disagree whether such

1  records are kept in officers' personnel files, inmates' files, or other files.  As a rule, this Court allows

2  discovery of records of similar claims against officers. This case proceeds, in part, on an excessive

3  force claim against defendants Fernando and Jericoff, and therefore records of incidents of excessive

4  force by these defendants are relevant to Plaintiff's claims.   Such records may also be relevant to

5  show untruthfulness on the part of the defendant. Fed. R. Evid. 404(b).

6        Defendants are ordered to further respond within forty-five days to RFP No. 3 and produce

7  all documents that concern excessive force claims against defendants Fernando and Jericoff for the

8  period from May 26, 2007 to May 26, 2009, whether the records are kept in personnel files, personnel

9  records, inmate files, records of inmate appeals, records of investigations, records of crime/incident

10  reports, or records of disciplinary actions.[3]  Defendants are not required to provide Plaintiff with

11  copies of his own inmate appeals, as these copies are readily available to Plaintiff.  **Defendants shall**

12  **redact all confidential information from the documents before providing them to Plaintiff.**

13  ~:~

14  >    **RFP NO. 5:**

15        A true and complete copy of the D.V.D. recorded by Correctional Officer W. Morris

16        at 11:45 A.M. on May 26, 2009.  Plaintiff does request that this copy be true and unedited.

17        Correctional Officer W. Morris did state in his incident report that he did make two (2) copies.

18  **Arguments**

19        Defendants explain that they did not address RFP No. 5 in their Supplemental Response

20  because they had already agreed to make the video recording of May 26, 2009 available for Plaintiff's

21  viewing, and at Plaintiff's deposition, Plaintiff confirmed that he had already seen the video.  Plaintiff

22  then clarified he wanted a copy of the video to send to a family member who is going to have the

23  quality of the video "improved" or "enhanced."  Defendants explained to Plaintiff that he could not

---

25  [3]While this Court may give some weight to privacy rights protected by state statutes, the "ultimate
26  responsibility for deciding how much weight to ascribe to such interests, and how that weight compares with the
significance of competing interests, must reside with the federal courts." Kelly v. City of San Jose, 114 F.R.D. 653,
656 (N.D.Cal. 1987).  "Questions of privilege that arise in the course of the adjudication of federal rights are
27  'governed by the principles of the common law as they may be interpreted by the courts of the United States in the
light of reason and experience.' " United States v. Zolin, 491 U.S. 554, 562, 109 S.Ct. 2619, 2625 (1989) (quoting
Federal Rule of Evidence 501).  Despite claims of privilege, personnel files are discoverable in federal question
28  cases. Garrett v. City and County of San Francisco, 818 F.2d 1515, 1519 n. 6 (9th Cir.1987) (citations omitted).

1  have a copy of the video, for security reasons, but that they would send a copy to the family member

2  if Plaintiff provided counsel with the name and address of the family member.  Thus, Defendants

3  believe the parties have resolved their dispute concerning the video recording.

4       Plaintiff now withdraws RFP No. 5.

5  **Discussion**

6       Based on Plaintiff's withdrawal of RFP No. 5, Defendants are not required to provide any

7  further response to this RFP.

8  **IV.**   **CONCLUSION**

9       Based on the foregoing, IT IS HEREBY ORDERED that:

10  1.     Plaintiff's amended motion to compel, filed on May 2, 2012, is GRANTED IN PART;

11       and

12  2.     Within forty-five days from the date of service of this order, Defendants shall serve

13       upon Plaintiff documents in response to Plaintiff's First Request for Production of

14       Documents, Request No. 3, as instructed by this order.

16       IT IS SO ORDERED.

17  **Dated:**   **September 14, 2012**         **/s/ Gary S. Austin**

18                            UNITED STATES MAGISTRATE JUDGE