UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM SUTHERLAND, | Case No. 1:09 cv 02152 LJO GSA PC |
| Plaintiff, | |
| vs. | FINDINGS AND RECOMMENDATION RE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| JAMES YATES, et al., | |
| Defendants | (ECF NO. 49) |
| | OBJECTIONS DUE IN THIRTY DAYS |

Plaintiff is a state prisoner proceeding pro se in this civil rights action.  This proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1).  Pending before the Court is Defendants' motion for summary judgment.  Plaintiff has opposed the motion.[1]

**I.    Procedural History**

Plaintiff is currently a state prisoner at Pleasant Valley State Prison (PVSP) in Coalinga, where the events at issue occurred.  Plaintiff names as defendants Correctional Officer (C/O) A. Fernando, C/O M. Jericoff, Lieutenant R. Lantz and Warden James Yates.  This action proceeds on the December 6, 2010, first amended complaint.  On June 16, 2011, the District Court entered an order, adopting the findings and recommendations of the Magistrate Judge.  The Court

---

[1]  Defendants' motion was filed on August 17, 2012.  On August 20, 2012, the Court issued and sent to Plaintiff the summary judgment notice required by Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).  (ECF No. 50.)

1

ordered that this action proceed on the December 6, 2010, first amended complaint on Plaintiff's Eighth Amendment claims against Defendants C/O Fernando and C/O Jericoff for excessive force and against Warden Yates for failure to protect Plaintiff.  The Court also ordered this action  to proceed on Plaintiff's related state tort claims.  All remaining claims and defendants were dismissed.[2]

Defendants answered the complaint on September 1, 2011, and on August 17, 2012, filed the motion for summary judgment that is before the Court.  On December 27, 2012, Plaintiff filed an opposition to the motion and Defendants filed a reply on January 3, 2013.

## II.    Allegations

On May 26, 2009, Plaintiff alleges that as he stood in the afternoon pill line, C/O Fernando split the line, causing Plaintiff to be placed near the end of the line.  It was a hot day and Plaintiff was not feeling well, due to chronic back pain and heat sensitivity, so he sat down at a nearby table to wait his turn.  Fernando approached Plaintiff, and Plaintiff told Fernando he was not feeling well.  Fernando instructed Plaintiff to get back in line.  Plaintiff tried to explain that his back hurt and he was heat sensitive, but Fernando again told Plaintiff to get back in line. Plaintiff again tried to explain.  Fernando then instructed Plaintiff to stand with his hands behind his back.  Plaintiff complied, and Fernando placed handcuffs on Plaintiff and became extremely aggressive, shoving Plaintiff's arms up and pulling Plaintiff's water bottle out of his pocket and smashing it on the ground.  Fernando yelled to C/O Jericoff, who was approaching, "we have a piece of shit here."  Plaintiff told Fernando that "you are not allowed to talk about inmates like that."  Fernando told Plaintiff to shut up and pushed Plaintiff's arms up so high that Plaintiff feared they would break.  Plaintiff told Fernando that he had a bad shoulder, but Fernando

---

[2] Plaintiff's claims for conspiracy, due process violations, and violations of the Penal Code were dismissed based on Plaintiff's failure to state a claim for relief.  Lt. Lantz was also dismissed for Plaintiff's failure to state any claims upon which relief may be granted against him.

continued lifting Plaintiff's arms, and Plaintiff was forced to lock his arms to prevent his shoulder from being dislocated.  Plaintiff cooperated with both of the officers and did not resist.

Plaintiff asked to speak to Internal Affairs, but Fernando and Jericoff became extremely violent and continued pushing Plaintiff's arms up.  On the way to the Program Office, the officers continued to shove Plaintiff's arms up.  At the Program Office, the officers slammed Plaintiff's face into the wall and swept Plaintiff's legs out from under him, causing him to hit the concrete chin first.  Plaintiff kept crying out that he wasn't resisting and that he wanted to see Internal Affairs.  While Plaintiff was on the ground, Fernando twisted Plaintiff's leg until Plaintiff cried out in pain.  Plaintiff was pulled up by his wrists, and Jericoff stomped on Plaintiff's right kidney and said in a threatening manner, "Do you still want to see Internal Affairs?"  Plaintiff responded, "No, please, I am not resisting you, please!"  Finally, Plaintiff was yanked up and placed into a cage with his right handcuff so tight that it cut into his wrist, causing it to bleed.  All of the officers in the Program Office refused to loosen the handcuffs for a long time.  When a medical employee came to make a report, an officer told Plaintiff he should just say he had a bad day.  Plaintiff was sent to his cell and confined for three days.

### III.   <u>Summary Judgment Standard</u>

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  Under summary judgment practice, the moving party

> [always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  In attempting to establish the

existence of this factual dispute, the opposing party may not rely upon the denial of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Rule 56(e); Matsushita, 475 U.S. at 586 n. 11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under governing law, Anderson, 477 U.S. at 248; Nidds v. Schindler Elevator Corp., 113 F.3d 912, 916 (9th Cir. 1996), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Matsushita, 475 U.S. at 588; County of Tuolumne v. Sonora Community Hosp., 263 F.3d 1148, 1154 (9th Cir. 2001).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  Giles v. Gen. Motors Acceptance Corp., 494 F.3d 865, 872 (9th Cir. 2007).  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's notes on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Rule 56(c).  The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)(per curiam)).  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  Richards v. Nielsen Freight Lines, 602 F.Supp. 1224, 1244-45 (E.D. Cal. 1985)(aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to material facts.  Where the record taken as a

whole could not lead a rational trier of fact to find for the nonmoving party, there is not 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

## IV.   **Defendants' Motion**

### A.   **Reasonable Use of Force**

Defendants argue that Defendant's use of force was reasonable, necessary and minimal. Defendants correctly note that the relevant factors to consider in evaluating a claim of excessive force in the prison context are:  (1) the extent of the injury suffered by an inmate; (2) the need for the application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response.  Hudson, 503 U.S. at 7; Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).  In considering these factors, prison authorities "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Whitley, 475 U.S. at 321 (quoting Bell v. Wolfish, 441 U.S. 520, 547 (1970)).

Defendants support their motion with the declarations of A. Fernando and M. Jericoff. Defendant Fernando declares that during the escort, Plaintiff was agitated and argumentative, and that Plaintiff twisted his torso more forcefully and tried to pull out of his and Jericoff's grasp. Specifically, Fernando declares that "As Sutherland continued to resist, I tightened my grip on his left-upper arm, pressed my shoulders into his back, and used my body weight to gain better control of him."  (Fernando Decl. ¶ 16.)   Defendant Jericoff declares that once Plaintiff began to twist his torso from side to side in an effort to break loose from Fernando's grasp, he immediately assisted Fernando in maintaining control of Plaintiff by taking hold of his right arm. Jericoff further declares that

> We continued to escort Sutherland towards the Program Office, but he became more resistive and his actions escalated.  He twisted his torso more violently and kicked his feet.
>
> Both Fernando and I ordered him to calm down and stop resisting. But Sutherland ignored our orders and continued to resist.

5

I forced Sutherland to the ground by pulling on his arms with my left hand and pushing down on his shoulders with my right hand. Sutherland fell forward, and Fernando and I held him down by pressing on his body with our hands. Responding staff immediately arrived and assisted us in maintaining control of Sutherland.

(Jericoff Decl. ¶¶ 9-12.)

The Court finds that these declarations establish that Defendants' use of force was reasonable and justified, and used in a good faith effort to restore order and maintain discipline. Specifically, Fernando's declaration establishes that "as Plaintiff continued to resist, I tightened my grip of his left-upper arm, pressed my shoulders into his back, and used my body weight to gain better control of him." (Fernando Decl. ¶ 16.) Defendant Jericoff's declaration establishes that Plaintiff made an effort to break loose from Fernando's grasp. Jericoff immediately assisted in maintaining control of Plaintiff by taking hold of his right arm. As Plaintiff was escorted towards the Program Office, he continued to be resistive and his actions escalated. Plaintiff was ordered by both Defendants to calm down, but he continued to resist and ignore orders. Plaintiff was therefore forced to the ground. This was accomplished by Jericoff pulling on Plaintiff's arms with his left hand and pushing down on Plaintiff's shoulders with his right hand. Plaintiff fell forward, and Defendants held him on the ground until responding staff assisted them in maintaining control of Plaintiff. (Jericoff Decl. ¶¶ 9-12.)

Defendants' evidence clearly establishes that there was a need for application of force – Plaintiff's continued resistance – and that the relationship between that need and the amount of force used constituted a reasonable response. The threat was reasonably perceived by Defendants. The evidence establishes that Jericoff did not intervene until Plaintiff broke free from Fernando's grasp, and that as Plaintiff was escorted to the Program Office, he continued to be resistive and his resistance escalated. The evidence establishes that after Plaintiff was brought down to the ground, responding staff had to assist in maintaining control.

6

Further, Defendants' evidence establishes that Plaintiff's injuries were consistent with the amount of force necessary to restrain Plaintiff.  At approximately 12:30 p.m., medical staff evaluated Plaintiff and noted that he had abrasions or scratches to his hands and knees.  Plaintiff informed medical staff that he "had a bad day."  (Medical Report of Injury or Unusual Occurrence, attached to Esquivel Decl., Ex. B, 15.)  On June 2 and 15, 2009, Plaintiff requested medical care for back pain, numbness and burning in his extremities, a rash on his right leg, and a bruise on his left leg.  Although he received medical care shortly after each request, he did not state, either in his request forms or during the medical visits, that his symptoms or conditions were caused as a result of the incident on May 26, 2009.  (Medical Records, Esquivel Decl. Ex. C, 1, 5.)   Prior to May 2009, Plaintiff had been complaining of back, leg, neck and shoulder pain for many years.  (Id.)

In opposition, Plaintiff submits his declaration.  Regarding the events at issue, Plaintiff declares the following:

> On May 26, 2009, I went out to the afternoon medication line which consisted of two lines approximately 150 to 200 people per line.
>
> I had been standing in the line that I was assigned to.
>
> It was an extremely hot day and I am an inmate that takes what are known as "HEAT MEDS," medication that has bad reactions to the body on hot days.
>
> I was not feeling good, I was lightheaded and a little queezy when Correctional Officer A. Fernando split the line to allow the closed custody inmates to go to the front of the line so that they could get back to their building for count, this happened every day since I had arrived.
>
> This put me at almost the back of the line again and due to the fact that I was not well I took a seat at a local bench for a moment to see if I might feel better, to see if the dizziness and queeziness might lighten up, I had hoped that sitting might help me to feel a little better.
>
> I also have a chronic back and neck problem that causes extreme pain and I was in pain as I was waiting in medication line for my pain management medication.

7

There are a number of signs posted around this facility and notices posted, as well as facility established rules on what a person who is on "HEAT MEDS" should do if any of the symptoms that I had should appeal.

I was attempting to do just what I have been instructed to do when Correctional Officer A. Fernando approached me, I attempted to inform him of how I was feeling as I was instructed to do by all HEAT MED info.

Officer A. Fernando just ordered me to get back into line.

I attempted to show him my "HEAT MED" card that the facility issues to inmates that are on "HEAT MEDS."

Officer A. Fernando just ordered me to get back in line or return to my building and refuse my medication.

I asked if I could talk to the Sergeant or a Supervisor so that I could explain my case and ask if I might sit in the shade or go into the holding tank inside the medical department until I felt better.

Officer A. Fernando just ordered me to stand and turn around.

I followed his instructions immediately and was placed into restraints.

Correctional Officer A. Fernando became extremely aggressive and shoved my hands up and pulled my water bottle out of my front pocket and smashed it on the ground.

Officer A. Fernando then called out to Officer M. Jericoff who was approaching, "we have a piece of s**t here."

I informed Officer A. Fernando that he wasn't allowed to speak like that about inmates including myself.

Officer A. Fernando told me to "shut the f**k up" and attempted to shove my arms up extremely high.

I informed Officer A. Fernando that I had a real bad shoulder, to please be careful.

Officer A. Fernando again replied "I told you to shut the f**k up" and again attempted to shove my arms up to an extremely dangerous level.

At this point I offered the only resistance that I did during the entire event, I placed my left hand over my right hand and countered his pushing locking my arms at a point where it didn't interfere with his control but did prevent any damage to my right shoulder, this lasted for approximately 10 to 15 seconds until Officer M. Jericoff arrived and took control of my right arm.

8

1

2

This is the only resistance that I offered during the entire event.

I did not once fail to cooperate with any instructions that were given to me by either officer.

I was under the impression that we were going to the Program Office where I could speak with a Sergeant or Superior about my condition so I had no reason to resist.

The walk towards the Program Office was calm and had no incidents. As we walked I did state that I wanted to speak to Internal Affairs about the way that I was treated.

Once I made this request Officers M. Jericoff and A. Fernando did become extremely violent, both Officers pushed my arms up so far that I thought that they would break or that my shoulder would, at the very least, become dislocated.

I was in a lot of pain and did cry out several times that I was not resisting but they, Officers M. Jericoff and A. Fernando, did keep lifting until either I was lifted off of the ground or almost lifted off of the ground and was pushed towards the approaching Program Office wall.

Once at the wall Officer M. Jericoff pushed my face into the wall at least two (2) times while I was not resisting and my hands were restrained behind my back.

Then Officer A. Fernando grabbed the cuffs of my pants and pulled my leg s out from under me causing me to fall face first into the concrete.

Once I was on the ground Officer A. Fernando did put a leg lock on my left leg and began to bend it in such a way that I felt the bone in my lower leg bend, I was terrified that it was going to snap, that I would be seriously hurt, I cried out that I wasn't resisting and wanted to talk to Internal Affairs.

While Officer A. Fernando was doing this to my leg Officer M. Jericoff was pulling my wrist restraints up and pushing them over my head causing the right restraint to twist cutting onto my wrist enough to cause it bleed badly and hurting my right shoulder extremely bad.

While doing this Officer M. Jericoff did stomp his heel or boot into my kidneys.

(Sutherland Decl. ¶¶ 4-35.)

As noted above, the evidence of the opposing party is to be believed, <u>Anderson</u>, 477 U.S.

at 255, and all reasonable inferences that may be drawn from the facts placed before the court

9

must be drawn in favor of the opposing party.  <u>Matsushita</u>, 475 U.S. at 587 (citing <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962)(per curiam)).   Although Plaintiff may not draw inferences without a factual foundation, he has submitted a declaration, based on personal knowledge, that establishes that he followed instructions when put into restraints, and did not offer any resistance except to prevent damage to his shoulder.  Plaintiff's declaration also establishes that his arms were pushed above his head in order to cause pain, and that his face was pushed into a wall when his hands were restrained and he was not offering any resistance.  Plaintiff's declaration also establishes that Defendant Fernando pulled Plaintiff's legs out from underneath him, causing him to fall face first into the concrete.  Plaintiff's declaration also establishes that Defendant Jericoff "stomped" Plaintiff in the kidneys while he was on the ground.  The Court finds that Plaintiff has come forward with evidence that establishes a triable issue of fact as to whether Defendants' use of force was excessive within the meaning of the Eighth Amendment.

That Plaintiff only suffered abrasions or scratches to his hands and knees is not dispositive.  The relevant inquiry is not whether Plaintiff's injuries are *de minimis*, but whether the use of force was *de minimis*.  <u>See</u> <u>Wilkins v. Gaddy</u>, 559 U.S. 34, 37 (2010)("Injury and force … are only imperfectly correlated, and it is the latter that ultimately counts.")  The degree of Plaintiff's injuries only serves as evidence of the degree of force used, it does not conclusively resolve the question of whether the degree of force was *de minimis*.  <u>See</u> <u>Wilkins</u>, 559 U.S. at 37 ("The extent of injury may . . . provide some indication of the amount of force applied.")  Defendant cannot escape liability for the use of force simply because Plaintiff failed to suffer any treatable injury.  "An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."  <u>Id.</u>; <u>Hudson</u>, 503 U.S. at 9 ("In the excessive force context, society's expectations are different.  When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated.  This is true whether or not significant injury is evident.") (internal citations omitted).  This case therefore turns on whether

10

the force used in a good faith effort to restore order or maintain discipline.  The extent of Plaintiff's injury is a factor on determining whether the force used was excessive.   Because Plaintiff has submitted evidence that establishes a triable issue of fact as to whether the force used was excessive, the motion for summary judgment should be denied on this ground.

**B.       Favorable Termination Rule**

Defendants argue that Plaintiff's excessive force claim is barred because success on his claim will necessarily invalidate his disciplinary finding of guilt.  In <u>Edwards v. Balisok</u>, 520 U.S. 641, 644 (1977), the United States Supreme Court applied the doctrine articulated in <u>Heck v. Humphrey</u>, 512 U.S. 477, 487 (1994), to prison disciplinary hearings.  In <u>Heck</u>, the Court held that a state prisoner's claim for damages for unconstitutional conviction or imprisonment is not cognizable under § 1983 if a judgment in favor of Plaintiff would necessarily imply the invalidity of his conviction or sentence, unless the prisoner can demonstrate  that the conviction or sentence has previously been invalidated.  512 U.S. at 487.  In applying the principle to the facts of <u>Balisok</u>, the  Court held that a claim challenging the procedures used in a prison disciplinary hearing, even if such a claim seeks money damages and no injunctive relief, is not cognizable under § 1983 if the nature of the inmate's allegations are such that, if proven, would necessarily imply the invalidity of the result of the prison disciplinary hearing.

Defendants argue that in <u>Smith v. City of Hemet</u>, 394 F.36 689 (9th Cir. 2005)(en banc), the Ninth Circuit recognized that if a criminal conviction arising out of the same facts stands and is fundamentally inconsistent with the unlawful behavior for which damages under § 1983 is sought, the civil action must be dismissed.  <u>Smith</u>, 394 F.3d at 695.  The Court noted that the relevant inquiry is "whether success in a subsequent § 1983 suit would necessarily imply the or demonstrate the invalidity of the earlier conviction or sentence." <u>Id</u>.  (citing <u>Heck</u>, 512 U.S. at 487)(internal quotations omitted).  In addressing this question, the Ninth Circuit stated that an allegation of excessive force by an officer would not be barred under <u>Heck</u> if the use of force was "distinct temporally or spatially from the factual basis for the person's conviction," such as if the use of excessive force occurred subsequent to the conduct on which the conviction was

based.  <u>Beets v. County of Los Angeles</u>, 669 F.3d 1038, 1042 (9th Cir. 2012)(citing <u>Smith</u>, 394

F.3d at 699).  "The critical element remains whether the plaintiff's action, if successful, will

demonstrate the invalidity of any outstanding criminal judgment."  <u>Beets</u>, 669 F.3d at 1043

(citing <u>Heck</u>, 512 U.S. at 486-87; <u>see also</u> <u>Cunningham v. Gates</u>, 312 F.ed 1148, 1155 (9th Cir.

2002)(holding that successful § 1983 suit for excessive force would necessarily imply the

invalidity of the plaintiff's state convictions).

Defendants' evidence establishes that Plaintiff was issued a disciplinary report for

resisting a peace officer in the performance of his duties resulting in the use of force as a result

of his actions on May 26, 2009.  (Rules Violation Report, Esquivel Decl. Ex. A.)   Defendants'

evidence also establishes that Plaintiff was found guilty of resisting an officer in the use of force

as a result of the disciplinary proceeding and assessed ninety days of time forfeiture.  (Rules

Violation Report, Esquivel Decl. Ex. A, 1,7.)

Defendants argue that according to the complaint, the incident on the yard with

Defendants Fernando and Jericoff was an uninterrupted chain of events.  As noted above in the

allegations of the first amended complaint, Plaintiff's statement of claim establishes a continuous

chain of events.  (Am. Compl. 3:8-5:20).

Defendants claim that Plaintiff's excessive force claim against Jericoff and Fernando Sgt.

is barred by the Supreme Court's decisions in <u>Heck v. Humphrey</u> (512 U.S. 477, 486 (1994) and

<u>Edwards v. Balisok</u>, 520 U.S. 641, 648 (1997) because an award for damages would necessarily

imply the invalidity of his disciplinary conviction for assault of a peace officer pursuant to Cal.

Code Regs., tit. 15 § 3005(c).  Because Plaintiff's disciplinary conviction has not been

invalidated, Defendants argue his excessive force claims are inconsistent with his disciplinary

conviction, and thus, must be brought in a habeas action , not pursuant to 42 U.S.C. § 1983.

"A state prisoner cannot use a § 1983 action to challenge the 'fact or duration of his

confinement,' because such an action lies at the 'core of habeas corpus.'"  <u>Simpson v. Thomas</u>,

528 F.3d 685, 693 (9th Cir. 2008)(quoting <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 489 (1973)).  Thus,

where a § 1983 action seeking damages alleges constitutional violations that would necessarily

12

imply the invalidity of a conviction or sentence, the prisoner must first establish that the underlying sentence or conviction has already been invalidated on appeal, by a habeas petition, or terminated in his favor via some other similar proceeding.  Heck, 512 U.S. at 438-37.  This "favorable termination" rule applies to prison disciplinary proceedings, if those proceedings resulted in the loss of good-time or behavior credits.  Balisok, 520 U.S. at 646-48 (holding that claim for monetary and declaratory relief challenging validity of procedures used to deprive prisoner of good-time credits is not cognizable under § 1983); see also Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005)(explaining that "a state prisoner's § 1983 action is barred (absent prior invalidation) no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) if success in that action would necessarily demonstrate the invalidity of confinement or its duration" (emphasis omitted)).  Stated another way, a § 1983 claim is barred if the "plaintiff could prevail only by negating 'an element of the offense of which he has been convicted.'"  Cunningham v. Gates, 312 F.3d 1148, 1153-54 (9th Cir. 2002)(citing Heck, 512 U.S. at 487 n. 6).  However, when the § 1983 claim does not necessarily implicate the underlying disciplinary action (or criminal conviction), it may proceed.  See Muhammad v. Close, 540 U.S. 749, 754-55 (2004).  Uncontroverted evidence in the record shows that after investigation and a disciplinary hearing, Plaintiff was convicted of resisting an officer resulting in the use of force.  (Rules Violation Report, Esquivel Decl. Ex. A, 1,7.)

In several cases, the Ninth Circuit has applied Heck's favorable termination requirement to consider, and sometimes preclude, excessive force claims brought pursuant to 42 U.S.C. § 1983.  For example, the Ninth Circuit found § 1983 excessive force claims filed by a prisoner who was convicted of felony murder and resisting arrest were barred by Heck because his underlying conviction required proof of an "intentional provocative act" which was defined as "not in self defense."  312 F.3d at 1152.   A finding that police had used unreasonable force while effecting the plaintiff's arrest, the court held, would "call into question" the validity of factual disputes which had necessarily already been resolved in the criminal action against him.

Id. at 1154.  However, in Smith v. City of Hemet, 394 F.3d 689 (9th Cir. 2005), the Ninth Circuit considered whether excessive force allegations of a prisoner who pled guilty to resisting arrest pursuant to Cal. Penal Code § 148(a)(1) were also barred by Heck and found that "Smith's § 1983 action was not barred . . .  because the excessive force may have been employed against him subsequent to the time he engaged in the conduct that constituted the basis for his conviction."  Id. at 693.  Under such circumstances, the Ninth Circuit held Smith's § 1983 action "neither demonstrated nor necessarily implied the invalidity of his conviction."  Id.; see also Sanford v. Motts, 258 F.3d 1117, 1120 (9th Cir. 2001)("If the officer used excessive force subsequent to the time Sanford interfered with the officer's duty, success in her section 1983 claim will not invalidate her conviction.  Heck is no bar."); Hooper v. County of San Diego, 629 F.3d 1127, 1134 (9th Cir. 2011)(holding that a conviction for resisting arrest under Cal. Penal Code § 148(a)(1) does not "bar a § 1983 claim for excessive force under Heck if the conviction and the § 1983 claim are based on different actions during 'one continuous transaction'").

Here, unlike the defendants in Cunningham, Defendants Fernando and Jericoff have not shown that Plaintiff's excessive force claims against them are necessarily inconsistent with his adjudication of guilt for battery on a peace officer.  As noted above, Plaintiff has come forward with evidence that creates a triable issue of fact as to whether the force used on Plaintiff was excessive within the meaning of the Eighth Amendment.  Plaintiff's declaration established that the only resistance he offered was to prevent injury.  Plaintiff's declaration also established that Defendants' subjected Plaintiff to force despite the fact that Plaintiff was handcuffed and offering no resistance.   Thus, this court cannot say that Plaintiff's excessive force claims "necessarily imply the invalidity" of his battery conviction.  Heck, 512 U.S. at 487.  The factual context in which the force was used is disputed.  Thus, even though Plaintiff was found guilty of willfully committing a violent injury upon a peace officer by either hitting him with his cane or tackling him to the ground, C/O Fernando and C/O Jericoff could, if Plaintiff's testimony is believed, nevertheless be found liable for responding "maliciously and sadistically" with the intent to cause him harm.  See Hudson v. McMillian, 503 U.S. at 1, 7 (1992); Simpson v.

14

Thomas, No. 2:03-cv-0591 MCE GGH, 2009 WL1327147 at *4 (E.D. Cal. May 12, 2009)(success on the plaintiff's Eighth Amendment excessive force claim would not necessarily invalidate his battery conviction pursuant to Cal. Code Regs., tit. 15 § 3005(c) because "even if Defendant acted unlawfully by using excessive force, Plaintiff could still have been guilty of battery"); accord Gipbisn v. Kernan, No. CIV S-07-0157 MCE EFB P, 2011 WL 533701 at *5-6 (E.D. Cal. 2011); Gabalis v. Plainer, No. CIV S-09-0253-CMK, 2010 WL 4880637 at *7 (E.D. Cal. 2010)("It is possible for defendants to have used excessive force and for plaintiff to have attempted to assault a correctional officer.  Thus, success on plaintiff's civil rights claims would not necessarily imply that the guilty finding and resulting loss of good-time credits is invalid."); Candler v. Woodford, No. C 04-5453 MMC, 2007 WL 3232435 at *7 (N.D. Cal. Nov. 1, 2007)("Because defendants have not shown that a finding of their use of excessive force would necessarily negate an element of the battery offense, the Court cannot conclude that plaintiff's claims are barred under Heck.").    Defendants' motion should therefore be denied on this ground.

### C.    **Warden Yates**

Plaintiff claims that Defendant Warden Yates was deliberately indifferent  to Plaintiff's safety, in that he failed to protect Plaintiff from Defendants Fernando and Jericoff.   To prevail on a claim that a prisoner's Eighth Amendment right to human conditions of confinement were violated, Plaintiff must come forward with evidence that establishes that Yates knew of and disregarded an excessive risk to Plaintiff's safety, which was presented by the conditions of his confinement.  Robinson v. Prunty, 249 F.3d 862, 866 (9th Cir. 2001).

A prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation must be, objectively, sufficiently serious.  Farmer v. Brennan, 511 U.S. 825, 833-34 (1994).  Second, the prison official must have a "sufficiently culpable state of mind," that is, one of deliberate indifference to the inmate's health or safety.  Id. at 835.  A prison official may be held liable under the Eighth Amendment only if he knows the inmate faces a substantial risk of serious harm and the official disregards that risk by failing to take reasonable measures to

abate it.  Id. at 847.  "[D]eliberate indifference describes a state of mind more blameworthy than

negligence" but does not require a "purpose of causing harm or with knowledge that harm will

result."  Id. at 835.  Liability requires that "the official must both be aware of facts from which

the inference could be drawn that a substantial risk of serious harm exists, and he must also draw

the inference."  Id. at 837.

A prison official who actually knew of a substantial risk to inmate health or safety may

be found free from liability of they responded reasonably to the risk, even if the harm ultimately

was not averted or prevented.  Farmer, 511 U.S. at 844.  An isolated "mishap" or "an accident,

with no suggestion of malevolence" will not give rise to an Eighth Amendment violation.  Baze

v. Rees,  553 U.S. 35, 50 (2008).  Also, mere inadvertence or error made in good faith will not

support an Eighth Amendment claim.  Estelle v. Gamble, 429 U.S. 97, 105-06 (1976); Whitley v.

Albers, 475 U.S. 312, 319 (1986).  Neither negligence nor gross negligence will constitute

deliberate indifference.  Farmer, 511 U.S. at 835-36, n. 4.

Defendants submit the declaration of Warden Yates.  Regarding the conduct at issue in

this lawsuit, Yates declares the following:

> Before receiving notice of this lawsuit, I did not know Officer
> Fernando or Jericoff.
>
> I do not recall ever having any interaction with either officer or
> being informed of their disciplinary history, if any.
>
> Inmate grievances or appeals (CDC 602) alleging staff misconduct
> were categorized as "staff complaints" and sent to my office for
> investigation.  My customary practice was to assign the complaint
> to an Associate Warden or Chief Deputy Warden for investigation
> and response at the second-level of review of the inmate-grievance
> process.
>
> If the investigation revealed that the staff member engaged in
> misconduct or I determined that further investigation into the
> allegations was warranted, I referred the matter to the Office of
> Internal Affairs (OIA) for the California Department of
> Corrections and Rehabilitation (CDCR).
>
> The OIA conducted its own investigation, including interviewing
> the complaining inmate and involved staff, and informed me of the
> outcome of its investigation.

16

If the OIA determined that a staff member engaged in misconduct, the matter was referred to me to impose the appropriate disciplinary action based on the severity of the violation.

As Warden, I did not discipline or have reason to know an officer posed a threat to inmates simply because an inmate filed a staff complaint for excessive force against him.  Based on my experience in processing staff complaints, inmates sometimes file a complaint against an officer for reasons unrelated to the veracity of the allegations.   Unless an officer was found to have engaged in misconduct, I did not reprimand or take disciplinary action against him, and I did not usually remove him from his post.

I was never informed, nor did I have knowledge of, any disciplinary action taken against Fernando or Jericoff for excessive force, if any.

I was never informed, nor did I have knowledge, that after an investigation, Fernando or Jericoff were found guilty of using unnecessary or excessive force against an inmate, if any.

I was never informed, nor did I have knowledge, that Fernando or Jericoff posed a threat, if any, to inmates at PVSP.

(Yates Decl. ¶¶ 3-12.)

Plaintiff argues, without evidentiary support, that Yates knew of the danger to Plaintiff. Plaintiff also argues, without evidentiary support, that Yates must have known of the danger Jericoff presented, because Jericoff had "such a large number of complaints."  (Opp'n. 16:12.) Plaintiff repeatedly contends that Yates should have known of the danger, and argues that the evidence supports his belief that Yates should have known.   Plaintiff does not, however, come forward with any competent evidence that Yates knew of any danger to Plaintiff.  Defendant Yates has come forward with evidence that establishes, without dispute, that he was never informed, or had any knowledge that, Fernando or Jericoff posed any threats to inmates or to Plaintiff in particular.  Judgment should therefore be granted in favor of Defendant Yates on this claim.

///

///

///

D.        **State Law Claims**

     1.        **Battery**

Under California law, "[a]n assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another" and "[a] battery is any willful and unlawful use of force or violence upon the person of another."  Cal. Penal Code §§ 249, 242 (West 2005); 5 B.E. Witkin, Summary of California Law, Torts § 346 (9th ed. § 1988).   For a civil battery claim in California, Plaintiff must prove "(1) defendant intentionally performed an act that resulted in a harmful or offensive contact with the plaintiff's person; (2) plaintiff did not consent to the contact; and (3) the harmful or offensive contact caused injury, damage, loss or harm to plaintiff."  Brown v. Ransweiler,171 Cal. App. 4th 516, 526 (2009).   Where the defendant is a peace officer, the plaintiff must also prove that the use of force was unreasonable.  Ransweiler, 171 Cal. App. 4th at 526.

As noted above, Plaintiff's evidence establishes a triable issue of fact as to whether Defendants Jericoff and Fernando subjected Plaintiff to excessive force within the meaning of the Eighth Amendment.  Specifically, Plaintiff's evidence establishes that he did not offer any resistance except to prevent damage to his shoulder, that his arms were pushed above his head in order to cause pain, and that his face was pushed into a wall when his hands were restrained and he was not offering any resistance.   Plaintiff's evidence also establishes that Defendant Fernando pulled his legs out from under him, causing him to fall on to the concrete and that Defendant Jericoff "stomped" him in the kidneys while he was on the ground.  The Court has found that Plaintiff has come forward with evidence that establishes a triable issue of fact as to whether Jericoff and Fernand used force maliciously and sadistically.  The Court also finds that this evidence establishes a triable issue of fact as to whether Defendants' use of force was intentional, unreasonable, caused harm to Plaintiff and was done without Plaintiff's consent.  The motion for summary judgment should therefore be denied as to Plaintiff's state law claim of battery.

///

2.    **Negligent Hiring**

Pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original

jurisdiction, the district court "shall have supplemental jurisdiction over all other claims in the

action within such original jurisdiction that they form part of the same case or controversy under

Article III," except as provided in subsections (b) and (c).  "[O]nce judicial power exists under §

1367(a), retention of supplemental jurisdiction over state law claims under 1367(c) is

discretionary."  Acri v. Varian Assoc., Inc., 114 F.3d 999, 1000 (9th Cir. 1997).  "The district

court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . .

the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. §

1367(c)(3).  The Supreme Court has cautioned that "if the federal claims are dismissed before

trial . . . the state claims should be dismissed as well."  United Mine Workers of Amer. v. Gibbs,

383 U.S. 715, 726 (1966).

Because the complaint states no cognizable federal claim against Defendant Yates, this

Court should not exercise its supplemental jurisdiction.  Accordingly, the Court recommends that

the court decline to exercise jurisdiction over Plaintiff's  state law claim of negligent hiring.

E.    **Qualified Immunity**

Defendants argue that they are entitled to qualified immunity insofar as their conduct did

not violate clearly established statutory or constitutional rights of which a reasonable person

would have known.  Government officials enjoy qualified immunity from civil damages unless

their conduct violates "clearly established statutory or constitutional rights of which a reasonable

person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  "Qualified

immunity is 'an entitlement not to stand trial or face the other burdens of litigation,'"  Saucier v.

Katz, 533 U.S. 194, 200 (2001) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985),

overruled on other grounds by Pearson v. Callahan, 555 U.S. 223, 233 (2009)).  In applying the

two-part qualified immunity analysis, it must be determined whether, "taken in the light most

favorable to [Plaintiff], Defendants' conduct amounted to a constitutional violation, and . . .

whether or not the right was clearly established at the time of the violation."  McSherry v. City of

Long Beach, 560 F.3d 1125, 1129-30 (9th Cir. 2009).  These prongs need not be addressed by the Court in any particular order.  Pearson, 555 U.S. at 233.  "The relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful "in the situation he confronted."  Norwood v. Vance, 591 F.3d 1062, 1068 (9th Cir. 2010).

As noted, the evidence offered by Plaintiff that the only resistance he offered was that to prevent injury to his shoulder, and that while he was handcuffed,  Fernando pulled Plaintiff's legs out from under him, causing him to fall on to the concrete.  The evidence also establishes that Jericoff stomped on his kidneys once he was on the ground.   The Court finds that it is clear to a reasonable officer that such conduct is unlawful.   Defendants are therefore not entitled to qualified immunity.

## V.    Conclusion and Recommendation

The Court finds that Defendants have come forward with evidence that establishes a lack of a triable issue of fact as to Defendants.  Plaintiff has met his burden of coming forward with evidence that establishes a triable issue of fact as to whether Defendants Jericoff and Fernando subjected Plaintiff to excessive force within the meaning of the Eighth Amendment, and whether Defendants Jericoff and Fernando subjected Plaintiff to battery within the meaning of California law.  Plaintiff has failed to come forward with evidence of a triable issue of fact as to Defendant Yates.  The Court will therefore recommended that the court decline to exercise jurisdiction over Plaintiffs' state law claims as to Defendant Yates.

Accordingly, IT IS HEREBY RECOMMENDED that:

1.  Defendants' motion for summary judgment be granted as Defendant Yates.

2.  The Court decline to exercise supplemental jurisdiction over Plaintiff's state law claim of negligent hiring.

3.  Defendants' motion for summary judgment is denied as to Plaintiff's Eighth Amendment claims and state law claims against Defendants Jericoff and Fernando.

These findings and recommendations are submitted to the United States District Judge assigned  to the case, pursuant to the provisions of Tile 28 U.S.C. § 636(b)(1).  Within thirty

days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time waives all objections to the judge's findings of fact.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).  Failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1152 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **January 15, 2014**

**/s/ Gary S. Austin**

UNITED STATES MAGISTRATE JUDGE